UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                           )
**STEVE SCHONBERG,**           )
                           )
    **Plaintiff,**         )
                           )
    v.                     )    Civil Action No. 10-02040
                           )    (JWR-CKK-RWR)
**Federal Election**           )
**Commission,** *et al.***,**          )
                           )
    **Defendants.**         )
_____)

## MEMORANDUM OPINION

Currently pending before the court designated to hear and determine plaintiff Steve Schonberg's second amended complaint are four motions: (1) Schonberg's motion to trifurcate the proceedings; (2) defendant Federal Election Commission's motion to dissolve the three-judge district court; (3) the Commission's motion to dismiss the second amended complaint; and (4) defendant United States' motion to dismiss the second amended complaint. This opinion addresses only the motion to dissolve the three-judge district court filed by the Commission. For the following reasons, we grant the motion.

### I.

As set forth in the second amended complaint, Schonberg, a Florida resident, ran unsuccessfully for Congress in November 2010; he intends to be a candidate for the same office in November 2012. *See* Second Am. Compl. ¶¶ 11, 12. On November 24, 2010, Schonberg filed a complaint for a declaratory judgment and an injunction against the Commission, alleging that certain

provisions of the Federal Election Campaign Act of 1971 ("FECA"), Pub. L. No. 92-225, 86 Stat. 3, and the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81, facially violate the Due Process, Equal Protection, Emoluments, Appointments, and Congressional Compensation Clauses of the United States Constitution. Compl. ¶¶ 1-3. The complaint focuses on the purported competitive advantages BCRA and FECA afforded incumbent Florida Congressman Cliff Stearns in defeating Schonberg's 2010 congressional bid and would continue to afford Stearns in the 2012 election cycle. *See, e.g., id.* ¶ 20. In Schonberg's view, the statutes "permit and encourage corruption in Congress," rather than "prevent gifting, bribery, and influence peddling." *Id.* ¶ 13. Schonberg also filed an application requesting that his constitutional challenges to BCRA be adjudicated by a three-judge district court. *See* BCRA § 403(a)(1), (d), 116 Stat. 113-14 (reprinted at 2 U.S.C. § 437h note); *see also* LCvR 9.1. The application for designation was granted on December 8, 2010, and the following day Judge Rogers and Judge Kollar-Kotelly were named to constitute, with Judge Roberts to whom the case was initially assigned, this three-judge district court.

On December 23, 2010, the Commission filed a motion to dissolve the three-judge district court on three grounds: the purported constitutional challenges to BCRA were actually challenges to FECA requiring adjudication by the U.S. Court of Appeals for the District of Columbia Circuit sitting en banc, *see* 2 U.S.C. § 437h; Schonberg lacked constitutional standing; and the claims were otherwise insubstantial or frivolous. Schonberg filed an amended complaint four days later repeating verbatim his constitutional challenges to BCRA and FECA and his view that they afford incumbent federal officeholders unconstitutional

competitive advantages over challengers.  *See* Am. Compl. ¶¶ 1-3, 16, 30.  It also contained several additions and clarifications.  In particular, the amended complaint named the United States as an additional defendant, alleged that the statute governing "Representational allowance for Members of House of Representatives," 2 U.S.C. § 57(b) (hereinafter "the MRA"), violated various constitutional provisions, and specified which claims involved only BCRA, Am. Compl. ¶¶ 153-62.  Responding to a minute order, the Commission indicated its intent to pursue its motion to dissolve because "the amendments [to the complaint] do not add any claims that may be appropriately considered by a three-judge court under section 403 of [BCRA], nor do the amendments provide standing or present any substantial claim that would support the convening of a three-judge court."  Comm'n Notice at 1.

Schonberg then filed a motion to trifurcate the proceedings on January 21, 2011.[1]  The motion acknowledged that the amended complaint brought claims arising under three statutes, each requiring adjudication by a separately constituted court – this three-judge district court for BCRA, the Court of Appeals sitting en banc for FECA, and a single-judge district court for the MRA.  Schonberg also noted his intention to file a second amended complaint to facilitate trifurcation.  This court, upon receiving the parties' status reports, by minute order set a schedule for the filing of the second amended complaint and the parties' motions and responsive briefs.  Schonberg filed a second amended

---

[1] In addition, Schonberg filed a motion to disqualify Commission counsel on conflict of interest grounds.  This court denied the motion.  *See Schonberg v. Fed. Election Comm'n*, No. 1:10-cv-02040, 2011 WL 311038 (D.D.C. Feb. 1, 2011) (per curiam) (three-judge district court).

complaint, the Commission re-filed its motion to dissolve the three-judge panel to address new allegations, and the Commission and the United States sought dismissal.

The second amended complaint again alleges that FECA, BCRA, and the MRA violate the Constitution and thus unlawfully provide incumbent officeholders with unfair competitive advantages in federal elections. *See* Second Am. Compl. ¶¶ 1-4, 16. It largely tracks the text of the first amended complaint and at times provides further factual elaboration. Although the second amended complaint reflects Schonberg's request for trifurcation, he nonetheless suggests that because his MRA claims "are inextricably intertwined with [his] BCRA and FECA claims, they should be heard by both the Three-Judge Court and the en banc Court of Appeals." *Id.* ¶ 8(c). As to BCRA, Schonberg clarified that his challenge on constitutional grounds concerned sections 101, 202, 203, 204, 211, 214, and 301. *See id.* ¶ 232. However, in a response brief, he narrowed his BCRA claim to section 301, signaling his abandonment of the remaining BCRA constitutional challenges. *See* Pl.'s Resp. to Comm'n's Mot. to Dissolve at 1 & n.1.

**II.**

The question presented by the Commission's motion to dissolve is whether Schonberg's constitutional challenge to BCRA § 301, codified as amended at 2 U.S.C. § 439a, is properly before this three-judge district court. The Commission's principal argument is that the claim, when properly viewed, presents a challenge to FECA, which can only be heard by the Court of Appeals sitting en banc.

Despite the mandatory language of BCRA § 403(a)(1) that a constitutional challenge to the statute "shall be heard by a 3-judge court convened pursuant to section 2284 of title 28, United States Code," 116 Stat. 114, it is well-settled that Schonberg must first present a "substantial claim" and "justiciable controversy." *Feinberg v. Fed. Deposit Ins. Corp.*, 522 F.2d 1335, 1338 (D.C. Cir. 1975) (citing *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 (1962)); *see also Rostker v. Goldberg*, 453 U.S. 57, 61 n.2 (1981). As regards justiciability, the Supreme Court explained that where a three-judge district court has been convened, it may find that dissolution is necessary because it lacks jurisdiction or the plaintiff has failed to demonstrate standing:

> Here the three-judge court dismissed the complaint for lack of "standing." This ground for decision, that the complaint was nonjusticiable, was not merely short of the ultimate merits; it was also, like an absence of statutory subject-matter jurisdiction, a ground . . . upon which the three-judge court could have dissolved itself, leaving final disposition of the complaint to a single judge.

*Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 99-100 (1974); *accord* 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure § 4235, at 209-10 (3d ed. 2007) (hereinafter "Wright & Miller").

The Supreme Court's conclusion on justiciability in *McConnell v. FEC*, 540 U.S. 93, 229 (2003), *overruled in part on other grounds by Citizens United v. FEC*, 130 S. Ct. 876, 913 (2010), is controlling. That case concerned (in part) a challenge to the constitutionality of BCRA § 307, which specifies campaign contribution limits for federal elections. *See* 2 U.S.C. § 441a. A three-judge district court was convened pursuant to

-6-

BCRA § 403(a)(1). Framing the issue as one of standing, the Supreme Court on direct appeal concluded that the plaintiffs' challenge was nonjusticiable for two reasons. First, the contribution limits at issue had been enacted decades earlier as part of FECA; "[BCRA] § 307 merely increased and indexed for inflation certain FECA contribution limits." *McConnell*, 540 U.S. at 229. To the extent the plaintiffs' claim attacked the constitutionality of the FECA contribution limits, the Court stated that it "ha[d] no power to adjudicate a challenge to the FECA limits . . . because challenges to the constitutionality of FECA provisions are subject to direct review before an appropriate en banc court of appeals, as provided in 2 U.S.C. § 437h, not in the three-judge District Court convened pursuant to BCRA § 403(a)." *Id.* Second, to the extent the plaintiffs' claim was directed at BCRA rather than FECA, the Court held that, despite having jurisdiction to hear the challenge, the plaintiffs lacked standing. "[I]f the Court were to strike down the increases and indexes established by BCRA § 307, it would not remedy the . . . plaintiffs' alleged injury because . . . the limitations imposed by FECA . . . would remain unchanged." *Id.* In short, a favorable ruling would not redress the plaintiffs' alleged injury.

These twin rationales apply with full force to foreclose this court's adjudication of Schonberg's BCRA claim. Like BCRA § 307, the provisions of BCRA § 301, which set forth the permissible and impermissible uses of campaign contributions accepted by successful candidates for federal office, derive from FECA. As it existed under FECA, 2 U.S.C. § 439a specified that "[a]mounts received by a candidate as contributions that are in excess of any amount necessary to defray his expenditures, and any other amounts contributed to an individual," could be used to

"defray any ordinary and necessary expenses incurred in connection with his or her duties as a holder of Federal office," contributed to certain charitable entities, or directed to "any other lawful purpose, including transfers without limitation to any national, State, or local committee of any political party." 2 U.S.C. § 439a (2000). It also prohibited candidates from converting the funds to personal use. *Id.* BCRA § 301 amended this provision by listing the same permitted uses in separately enumerated paragraphs, except for the phrase "any other lawful purpose," referencing donations received by individuals as support for their holding federal office, and providing a general definition of conversion to personal use with a non-exclusive list of examples. 2 U.S.C. § 439a (Supp. II 2002).[2]

Schonberg acknowledges the similarities and relation between the FECA and BCRA versions of 2 U.S.C. § 439a in stating that "[t]he list [of permitted uses] was created . . . from what was a paragraph in the older FECA law," while the list of prohibited uses "perhaps 'clarified'" rules on conversion. Pl.'s Resp. to Comm'n's Mot. to Dismiss at 24. The legislative history confirms that the two versions are essentially the same. The purpose of the BCRA amendment was to "specify which candidate expenditures from campaign funds would be considered an unlawful conversion of a contribution or donation to personal use" by "codify[ing] the FEC's current regulations on the use of campaign funds for

---

[2] The Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, § 532, 118 Stat. 2809, 3272 (2004), reinserted the "any other lawful purpose" language and permitted funds to be transferred to state and local candidates, subject to the provisions of state law. The section was amended once more in 2007 to restrict the use of campaign funds for flights on noncommercial aircraft. *See* Honest Leadership and Open Government Act of 2007, Pub. L. No. 110-81, § 601, 121 Stat. 735, 774-75.

personal expenses," while leaving unchanged the allowance for candidates to transfer excess campaign funds to political parties. 148 CONG. REC. S2143 (daily ed. Mar. 20, 2002) (statement of Sen. Feingold on § 301 of the McCain-Feingold/Shays-Meehan Campaign Finance Reform Bill); *see also* H.R. REP. NO. 107-131, pt. 1, at 8 (2001), *reprinted in* 2002 U.S.C.C.A.N. 106, 113; 148 CONG. REC. S1993-94 (daily ed. Mar. 18, 2002) (reprinting section-by-section analysis). As such, the change effected by BCRA § 301 is not materially greater than that effected by BCRA § 307's raising and indexing the contribution limits at issue in *McConnell*. Accordingly, Schonberg's claim that BCRA § 301 is unconstitutional is actually a challenge to FECA, which falls outside the jurisdiction of a three-judge district court under BCRA § 403(a)(1) and must instead be adjudicated by the Court of Appeals sitting en banc pursuant to 2 U.S.C. § 437h. *See McConnell*, 540 U.S. at 229.

To the extent Schonberg's second amended complaint is directed at BCRA rather than FECA, the holding in *McConnell* on standing requires dissolution of this court because he lacks standing, failing to show redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Schonberg's alleged injury is based on his claim that BCRA unconstitutionally provides incumbents with an advantage in federal elections. *See, e.g.,* Second Am. Compl. ¶¶ 16-44. As in *McConnell*, were this court to hold that BCRA § 301 is unconstitutional, the limitations imposed by FECA would remain in force. "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S.

425, 442 (1886).[3] Alternatively, assuming that holding BCRA § 301 unconstitutional would render 2 U.S.C. § 439a a legal nullity in all its iterations, this result would not further Schonberg's goal of more stringent regulation of the federal campaign finance system and elimination of the alleged competitive advantages for incumbent federal candidates. Without a statute specifying permissible and impermissible uses of federal campaign contributions, the Constitution would be the only source for controlling legal authority governing relevant conduct, *see United States v. Bounos*, 730 F.2d 468, 472 (7th Cir. 1984), aside from federal statutory prohibitions on bribery and the like and various state laws regarding federal elections. Schonberg has made no showing that federal candidates, free from the constraints imposed by 2 U.S.C. § 439a, would be *more* restricted in their use of campaign funds or that the Constitution itself forbids the pecuniary evils of the federal campaign finance system that he alleges persist. To the contrary, removing these limits would exacerbate, rather than remedy, the perceived ills. Under either view of the state of the law were Schonberg to prevail, he fails to meet constitutional standing requirements with respect to his BCRA claim.

We, therefore, hold that this three-judge district court lacks jurisdiction to consider Schonberg's BCRA claim and we grant the Commission's motion to dissolve. The second amended complaint fails to identify a constitutional BCRA claim over which this court has jurisdiction under BCRA § 403(a); nor has

---

[3] *See also United States v. Schmit*, 881 F.2d 608, 614-15 (9th Cir. 1989); *City of Cleveland v. United States*, 166 F. 677, 680 (6th Cir. 1909); *cf. McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) (Arkansas law); *Kovacs v. First Union Home Equity Bank (In re Huffman)*, 408 F.3d 290, 294 (6th Cir. 2005) (Ohio law).

Schonberg shown the injuries he alleges in the second amended complaint would be redressed by a favorable decision of this court holding BCRA § 301 unconstitutional. In the absence of jurisdiction, this court cannot address Schonberg's MRA claim concurrently with his BCRA claim because, as he asserts, they are inextricably intertwined. *See Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 504 n.5 (1972) (holding that ancillary claims are properly before three-judge district court "so long as there is a nonfrivolous constitutional claim that constitutes a justiciable controversy"). *See generally* Wright & Miller § 4235, at 222-23. Consideration of Schonberg's motion to trifurcate and the motions to dismiss filed by the Commission and the United States as to his remaining claims are returned to the single-judge district court.

_____/s/_____
JUDITH W. ROGERS
United States Court of Appeals for
the District of Columbia Circuit

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Court for
the District of Columbia

_____/s/_____
RICHARD W. ROBERTS
United States District Court for
the District of Columbia