UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
STEVE SCHONBERG,               )
                               )
        Plaintiff,             )
                               )
        v.                     )      Civil Action No. 10-2040 (RWR)
                               )
FEDERAL ELECTION COMMISSION    )
et al.,                        )
                               )
        Defendants.            )
_____)
```

## MEMORANDUM OPINION

Pro se plaintiff Steve Schonberg brings this action against the Federal Election Commission ("FEC") and the United States, challenging the constitutionality of provisions of the Federal Election Campaign Act of 1971 ("FECA") and the Bipartisan Campaign Reform Act of 2002 ("BCRA"); the statute governing representational allowances for Members of the House of Representatives ("MRA"), codified at 2 U.S.C. § 57; and legislation commonly referred to as "earmarks." Schonberg has moved to trifurcate the proceedings, and the defendants have each moved to dismiss. Schonberg has not shown that he has standing to bring his FECA and BCRA claims, the United States has not waived its sovereign immunity with respect to his MRA and earmarks claims, and even if the United States had waived its sovereign immunity, Schonberg has failed to establish that the MRA or earmarks violate the Constitution. Therefore, the

defendants' motions to dismiss will be granted, and Schonberg's
motion to trifurcate will be denied.

BACKGROUND

The background of this case is discussed fully in <u>Schonberg
v. FEC</u>, Civil Action No. 10-2040, 2011 WL 2441313 (D.D.C. May 12,
2011) (per curiam). Briefly, Schonberg is a Florida resident who
ran unsuccessfully for the House of Representatives in Florida's
Sixth Congressional District and who has expressed his intention
to run again for the seat in 2012. <u>Id.</u> at *1. Schonberg's
second amended complaint claims that FECA, BCRA, the MRA,[1] and
legislation earmarking[2] funds for the College of Central Florida
and the University of Florida provided the incumbent, Congressman
Cliff Stearns, an unconstitutional competitive advantage in 2010

---

[1] The MRA is the funding provided to members of the House of
Representatives to operate their offices, both in the District of
Columbia and in their home districts. <u>See generally</u> Ida A.
Brudnick, Cong. Research Serv., R40962, Members' Representational
Allowance: History and Usage (2011).

[2] An earmark is

a provision or report language included primarily at
the request of a Member, Delegate, Resident
Commissioner, or Senator providing, authorizing or
recommending a specific amount of discretionary budget
authority, credit authority, or other spending
authority for a contract, loan, loan guarantee, grant,
loan authority, or other expenditure with or to an
entity, or targeted to a specific State, locality or
Congressional district, other than through a statutory
or administrative formula-driven or competitive
process.

House Rule XXI, cl. 9(e), 112th Congress (2011).

and will continue to provide that advantage to him in the 2012 election. (2d Am. Compl. ¶¶ 17, 32-44, 166-75, 186-89, 203, 219-23, 229, 233, 248.) When he filed his original complaint, Schonberg also filed an application for a three-judge court to adjudicate his claims, which was granted. After the three-judge court was convened, Schonberg amended his complaint and filed a motion to trifurcate his claims, arguing that his BCRA claims were properly before the three-judge court, but that the Court of Appeals sitting en banc should adjudicate his FECA claims and that a single district judge should adjudicate his MRA and earmark claims. Schonberg then filed a second amended complaint, the FEC moved to dissolve the three-judge court and to dismiss the complaint, and the United States moved to dismiss the complaint. The three-judge court granted the FEC's motion to dissolve the three-judge court and returned the motions to dismiss and to trifurcate to this Court. The FEC moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss arguing that there is no subject-matter jurisdiction over Schonberg's FECA and BCRA claims because he lacks standing. The United States moves under Rules 12(b)(1) and 12(b)(6) to dismiss arguing that there is no subject-matter jurisdiction over Schonberg's MRA and earmarks claims because the United States has not waived its sovereign immunity from suit, and that Schonberg has failed to state a claim.

## DISCUSSION

I.    FECA AND BCRA CLAIMS

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18 (D.D.C. 2007); see also Moms Against Mercury v. FDA, 483 F.3d 824, 828 (D.C. Cir. 2007). A court "must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." Short v. Chertoff, 526 F. Supp. 2d 37, 41 (D.D.C. 2007). Although a court is to construe liberally a pro se complaint, Howerton v. Ogletree, 466 F. Supp. 2d 182, 183 (D.D.C. 2006), "[p]ro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." Gomez v. Aragon, 705 F. Supp. 2d 21, 23 (D.D.C. 2010).

"[A] showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In order for a plaintiff to establish standing to bring a constitutional claim, Article III requires the plaintiff to show an injury in fact, that the conduct complained of caused the injury, and that it is likely, and not merely speculative, that

the relief the plaintiff seeks would redress the injury. <u>See</u>

<u>Ariz. Christian Sch. Tuition Org. v. Winn</u>, 131 S. Ct. 1436, 1442

(2011) (citing <u>Lujan</u>, 504 U.S. at 560-61). "[W]hen the plaintiff

is not himself the object of the government action or inaction he

challenges, standing is not precluded, but it is ordinarily

'substantially more difficult' to establish." <u>Lujan</u>, 504 U.S. at

562 (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 758 (1984)).

With respect to Schonberg's FECA and BCRA claims, the

injuries of which he complains are that the campaign finance

regime as currently enacted unfairly advantages incumbents in

federal elections and has prevented the United States from

enacting universal, affordable health care. (2d Am. Compl.

¶¶ 16-29, 33, 37, 89-104.) However, even if FECA and BCRA were

to be found to be

> a legal nullity in all [their] iterations, this result
> would not further Schonberg's goal of more stringent
> regulation of the federal campaign finance system and
> elimination of the alleged competitive advantages for
> incumbent federal candidates. Without a statute
> specifying permissible and impermissible uses of
> federal campaign contributions, the Constitution would
> be the only source for controlling legal authority
> governing relevant conduct, *see United States v.*
> *Bounos*, 730 F.2d 468, 472 (7th Cir. 1984), aside from
> federal statutory prohibitions on bribery and the like
> and various state laws regarding federal elections.
> Schonberg has made no showing that federal candidates,
> free from the constraints imposed by [FECA or BCRA]
> would be *more* restricted in their use of campaign
> funds, or that the Constitution itself forbids the
> pecuniary evils of the federal campaign finance system
> that he alleges persist. To the contrary, removing
> these limits would exacerbate, rather than remedy, the
> perceived ills.

Schonberg, 2011 WL 2441313, at *4.  Accordingly, holding FECA or

BCRA unconstitutional is not likely to redress Schonberg's

claimed injuries.[3]  He therefore has failed to establish standing

---

[3] Schonberg also claims that FECA, by creating campaign
committees that can accept campaign contributions, violates the
Appointments, Ascertainment, and Emoluments Clauses of the
Constitution.  (2d Am. Compl ¶¶ 205-17.)  The Emoluments Clause
provides that "no Person holding any Office under the United
States, shall be a Member of either House [of Congress] during
his Continuance in Office."  U.S. Const. Art. I, § 6, cl. 2.  The
Appointments Clause vests in the President the power to appoint
"Officers of the United States" but provides that "the Congress
may by Law vest the Appointment of such inferior Officers, as
they think proper, in the President alone, in the Courts of Law,
or in the Heads of Departments."  U.S. Const. Art. II § 2, cl. 2.
Schonberg appears to claim that incumbents act as "officers" of
their campaign committees and therefore hold an "office," in
violation of both the Appointments and Emoluments Clauses.
Arguably, a favorable decision might redress any competitive
disadvantage Schonberg suffers from the existence of campaign
committees, since such committees would not exist absent their
authorization in FECA.

However, in Buckley v. Valeo, 424 U.S. 1, 124-26 (1976), the
Supreme Court analyzed together the Appointments and Emoluments
Clauses and concluded that to qualify as an officer of the United
States, an appointee must "exercis[e] significant authority
pursuant to the laws of the United States[.]"  Because Schonberg
provides no authority for the proposition that incumbents
exercise any, yet alone significant, authority of the United
States as agents of their campaign committees, he has failed to
plead a violation of either the Appointments or the Emoluments
Clauses.  Moreover, to the extent that Schonberg pleads that
benefits incumbents derive from their campaign committees
constitute compensation, Schonberg has not pled a violation of
the Ascertainment Clause, which does not provide a substantive
limit on the amount or Congressional source of members'
compensation.  See infra II(B)(2).

over his FECA and BCRA claims, and the FEC's motion to dismiss
will be granted.[4]

## II.  MRA AND EARMARK CLAIMS

Schonberg also challenges the constitutionality of the MRA
and legislative earmarks.  He claims that the MRA disadvantages
him as a challenger by providing the incumbent member of Congress
against whom he is running with taxpayer funding for a website
and staff, which aids the incumbent's prospects for reelection.
(2d Am. Compl. ¶¶ 30-32, 36, 38-40, 42, 44, 105-32.)  Schonberg
also claims that the two earmarks he challenges provided the
incumbent with an unfair advantage relative to challengers, in
violation of the Equal Protection Clause, and with
"unconstitutional compensation" by encouraging others to provide
job opportunities to the incumbent's wife and sporting tickets to

---

[4] In his motion to trifurcate, Schonberg argues that his
FECA claims should be heard by the United States Court of Appeals
for the District of Columbia Circuit sitting en banc.  See 2
U.S.C. § 437h ("The district court immediately shall certify all
questions of constitutionality of this Act to the United States
court of appeals for the circuit involved, which shall hear the
matter sitting en banc.").  "Despite the mandatory phrasing of
the certification provision, district courts presented with
complaints brought under section 437h need not automatically
certify every constitutional question raised to the en banc court
of appeals."  Mott v. FEC, 494 F. Supp. 131, 133 (D.D.C. 1980).
Rather, the procedure is "circumscribed by the constitutional
limitations on the jurisdiction of the federal courts[,]"
including the requirement that a party have standing to raise a
constitutional claim.  Cal. Med. Ass'n v. FEC, 453 U.S. 182, 192
n.14 (1981).  Because Schonberg lacks standing, his
constitutional FECA claims will not be certified to the court of
appeals sitting en banc, and his motion to trifurcate will be
denied.

the incumbent, and to name buildings after the incumbent.[5] (Id. ¶¶ 229-30.)

A. Sovereign immunity

Because the United States' consent to be sued in a particular court defines the scope of that court's jurisdiction, "[a]bsent a waiver, sovereign immunity shields the Federal Government . . . from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). A waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (internal

---

[5] In addition to challenging these two particular earmarks, Schonberg seeks a prospective declaration that any future earmark obtained by Stearns during the 112th Congress be declared unconstitutional. (2d Am. Compl. at 65.) However, Schonberg's challenge to the constitutionality of future earmarks does not present a justiciable case or controversy. "Article III, section 2 of the Constitution limits federal courts to deciding actual, ongoing controversies." 21st Century Telesis Joint Venture v. FCC, 318 F.3d 192, 198 (D.C. Cir. 2003) (internal quotation marks omitted). Accordingly, federal courts are prohibited from rendering advisory opinions and from resolving issues that "cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975). For there to be subject-matter jurisdiction over a claim, therefore, a judgment must resolve a real and substantial controversy and not rely on a hypothetical set of facts. Id. Because "the opinion of a court on hypothetical Acts of Congress . . . would be difficult to characterize as anything but advisory[,]" U.S. Nat'l Bank of Or. v. Ind. Ins. Agents of Am., Inc., 508 U.S. 439, 447 (1993), there is no subject-matter jurisdiction over Schonberg's challenge to earmarks he believes may be enacted in the future.

citation omitted). "[C]onditions upon which the Government consents to be sued must be strictly observed[,]" Lehman v. Nakshian, 453 U.S. 156, 161 (1981) (quotation marks and citation omitted), and any waiver is construed strictly in the sovereign's favor. Lane, 518 U.S. at 192.[6]

However, it "is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional[.]" Clark v. Library of Cong., 750 F.2d 89, 102 (D.C. Cir. 1984); see also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690 (1949) (reasoning that where a "statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional[,]" "the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign"). Here, Schonberg has not styled his suit as one against a government official, but rather as one against the United States. Even a liberal construction of his complaint does not yield a readily apparent officer or agency against whom or which he seeks specific relief. Cf. Clark, 750 F.2d at 102 (holding that plaintiff's claim was not barred by

_____

[6] But see Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 589 (2008) (noting that the "sovereign immunity canon is just that -- a canon of construction" and that it does not "displace[] the other traditional tools of statutory construction").

sovereign immunity because he sought specific relief against a government official).  His claim, therefore, will be barred by sovereign immunity if no unequivocally expressed waiver exists.

The Administrative Procedure Act ("APA") provides that "[t]he United States may be named as a defendant" in an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority[.]" 5 U.S.C. § 702.  This provision waives the government's immunity from suit.  Trudeau v. FTC, 456 F.3d 178, 186 (D.C. Cir. 2006).  Although Schonberg does not bring his claims under the APA, there "is nothing in the language of . . . § 702 that restricts its waiver to suits brought under the APA."  Id.  However, the APA's waiver of sovereign immunity applies only to suits for specific relief against an agency or officer acting or failing to act in an official capacity.  Nowhere in his complaint does Schonberg identify an agency that, or an officer of the United States who, acted or failed to act in a way that implicates the constitutionality of the MRA or earmarks.  Rather, Schonberg argues in his opposition that the "members of the House of Representatives cannot pass a law that is a violation of" the Constitution.  (Pl.'s Resp. in Opp'n to Def. United States' Mot. to Dismiss ("Pl.'s Opp'n") at 11.)  Because the APA explicitly excludes Congress from its definition of an agency, 5 U.S.C.

§ 701(b)(1)(A), it does not waive sovereign immunity for Schonberg's claims.  <u>See</u> <u>Clark</u>, 750 F.2d at 102.  Schonberg has not established that sovereign immunity does not bar his claim, nor has he established that the United States has waived its sovereign immunity in this context, and the United States' motion to dismiss for lack of subject matter jurisdiction will be granted.  Even if sovereign immunity did not bar Schonberg's MRA and earmarks claims, however, they would still fail on the merits.

     B.   <u>Failure to state a claim</u>

The United States also has moved to dismiss Schonberg's MRA claims under Rule 12(b)(6) for failure to state a claim.  "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, <u>id.</u>, and "the court must assume the truth of all well-pleaded allegations."  <u>Warren v. Dist. of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir. 2004).

     1.   Equal protection

"Unless a classification . . . is drawn upon inherently suspect distinctions such as race, religion, or alienage," statutory distinctions are presumed constitutional, and will survive a challenge if the classification is "rationally related

to a legitimate state interest." <u>City of New Orleans v. Dukes</u>,
427 U.S. 297, 303 (1976).  Although not every non-suspect
legislative classification passes muster under rational basis
review, <u>see, e.g.</u>, <u>Metro. Life Ins. Co. v. Ward</u>, 470 U.S. 869,
882 (1985) (holding that a preferential state tax rate for
domestic businesses violated the Equal Protection Clause because
the state's justifications -- that the tax promoted domestic
industry and encouraged investment in domestic assets -- were not
legitimate government interests since if they were, "any
discriminatory tax would be valid if the State could show it
reasonably was intended to benefit domestic business"), "the
judiciary may not sit as a superlegislature to judge the wisdom
or desirability of legislative policy determinations[.]"  <u>Dukes</u>,
427 U.S. at 303.

Schonberg alleges that the MRA and earmarks violate the
equal protection component of the Fifth Amendment by
discriminating against challengers in favor of incumbents.  (2d
Am. Compl. ¶¶ 222, 229.)  Schonberg provides no authority for the
proposition that a statute that provides benefits to an incumbent
but not a challenger draws a suspect classification, and other
courts have explicitly rejected the notion that such a
classification is suspect.  <u>See, e.g.</u>, <u>El-Amin v. State Bd. of
Elections</u>, 717 F. Supp. 1138, 1140 (E.D. Va. 1989) (concluding
that although the "plaintiffs claim that the statute denies equal

protection . . . because . . . incumbents receive preferential
treatment[,]" the statute was not subject to strict scrutiny
because "it does not make a 'suspect classification'").
Therefore, so long as the MRA and the challenged earmarks are
rationally related to a legitimate government interest, they will
pass muster under the Equal Protection Clause.  See FCC v. Beach
Commc'ns, Inc., 508 U.S. 307, 313 (1993) ("In areas of . . .
economic policy, a statutory classification that neither proceeds
along suspect lines nor infringes fundamental constitutional
rights must be upheld against equal protection challenge if there
is any reasonably conceivable state of facts that could provide a
rational basis for the classification.").

   The MRA provides a member of the House of Representatives
with funding to compensate and provide benefits to staff members,
to rent and maintain a district office, and to pay for travel,
printing, supplies, shipping, equipment, and franking expenses.
See Ida A. Brudnick, Cong. Research Serv., R40962, Members'
Representational Allowance: History and Usage 9-10 (2011).  Such
funding allows representatives "to operate their offices in a way
that supports their congressional duties and responsibilities[.]"
Id. at 1; see also Gravel v. United States, 408 U.S. 606, 616
(1972) (noting that "it is literally impossible, in view of the
complexities of the modern legislative process, with Congress
almost constantly in session and matters of legislative concern

constantly proliferating, for Members of Congress to perform
their legislative tasks without the help of aides and
assistants"). There is plainly a legitimate government interest
in ensuring that members of the House of Representatives are able
to carry out their duties and responsibilities, and it is easy to
conclude that providing such funding to members of Congress and
not to non-members of Congress is rationally related to this
interest. Schonberg therefore has failed to state an equal
protection claim with respect to the MRA.

Similarly, there is a legitimate government interest in
exercising Congress' appropriation authority to provide funding
for higher education institutions. See Buckley v. Valeo, 424
U.S. 1, 90 (1976) ("It is for Congress to decide which
expenditures will promote the general welfare[.]"). Granting
authority to members of Congress but not to non-members of
Congress to spend federal funds is rationally related to this
interest. Schonberg therefore has failed to state an equal
protection claim with respect to the challenged earmarks.

2. Ascertainment Clause

The Ascertainment Clause provides that members of Congress
"shall receive a Compensation for their services, to be
ascertained by Law, and paid out of the Treasury of the United
States." U.S. Const. Art. 1 § 6, cl. 1. Schonberg claims that
the MRA violates the Ascertainment Clause by providing

"compensation over and above that contained in the
[Ascertainment] Clause." (Pl.'s Opp'n at 11.) Schonberg also
claims that the school earmarks he challenges provided Stearns
with "unconstitutional compensation" by encouraging others to
provide job opportunities to Stearns' wife and sporting tickets
to Stearns, and to name buildings after Stearns. (2d Am. Compl.
¶ 230.) However, Schonberg cites no authority for the
proposition that the Ascertainment Clause provides any
substantive limit on the amount or Congressional source of member
compensation. Rather, the clause merely creates the procedural
requirement that Congress set its own pay rather than delegating
that task to other bodies, such as state legislatures. See
Humphrey v. Baker, 848 F.2d 211, 215 (D.C. Cir. 1988) (citing
Pressler v. Simon, 428 F. Supp. 302 (D.D.C. 1976), for the
proposition that "the animating purpose of the Ascertainment
Clause" is "to affix political responsibility for the level of
Members' pay ultimately with Congress itself"). Even if
Schonberg could demonstrate that the clause imposes a substantive
limit on member compensation, the MRA would not violate such a
limit, as it does not fund member salaries. See Members'
Representational Allowance at 10. Nor do the benefits Schonberg
asserts that Stearns has derived from earmarks -- even if
Schonberg could succeed in proving a causal connection between
the earmarks and the benefits -- constitute member salary.

Schonberg has therefore failed to state a claim that the MRA or the school earmarks he challenges violate the Ascertainment Clause.

## CONCLUSION

Schonberg has not established that he has standing for his BCRA and FECA claims, nor has he demonstrated that the government has waived its sovereign immunity or that he has stated a claim with respect to his MRA and earmark claims. Accordingly, the defendants' motions [33, 34] to dismiss will be granted, and Schonberg's motion [24] to trifurcate proceedings will be denied. An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 23rd day of June, 2011.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge